UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investment I, L.L.C.; Ritchie Capital Structure Arbitrage Trading, Ltd.; and Ritchie Capital Management, Ltd., | Civil No. 14-4786 (DWF/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; J.P. Morgan Private Bank; Richter Consulting, Inc.; Wells Fargo & Co., as successor by merger to Wachovia Capital Finance (Central); Wells Fargo Bank N.A.; Wachovia Capital Finance Corporation Central; UBS Loan Finance, L.L.C.; UBS AG; UBS AG Stamford Branch; Merrill Lynch Business Financial Services, Inc.; LaSalle Business Credit, L.L.C.; Bank of America Business Capital; Bank of America Corp.; The CIT Group Inc.; The CIT Group/Business Credit, Inc.; PNC Bank, N.A.; Fifth Third Bank; Webster Business Credit Corporation; Associated Commercial Finance, Inc.; Chase Lincoln First Commercial Corporation; and J.P. Morgan Europe Ltd., | |
| Defendants. | |

_____

James W. Halter, Esq., and James M. Jorissen, Esq., Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., counsel for Plaintiffs.

David J. Woll, Esq., Isaac M. Rethy, Esq., Michael Freedman, Esq., Thomas C. Rice., Esq., and William T. Pilon, Esq., Simpson Thacher & Barlett LLP; and John R. McDonald, Esq., and Benjamin E. Gurstelle, Esq., Briggs & Morgan, PA, counsel for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Private Bank, and Chase Lincoln First Commercial Corporation.

Bradley R. Schneider, Esq., David. H. Fry, Esq., Kevin H. Scott, Esq., and Marc T. G. Dworsky, Esq., Munger Tolles & Olson LLP; and Daniel J. Millea, Esq., and Elizabeth V. Kniffen, Esq., Zelle Hofmann Voelbel & Mason LLP, counsel for Defendants Wells Fargo & Co., as successor by merger to Wachovia Capital Finance (Central), Wells Fargo Bank N.A., Wachovia Capital Finance Corporation (Central), UBS Loan Finance, L.L.C., UBS AG, UBS AG Stamford Branch, LaSalle Business Credit, L.L.C., Bank of America Business Capital, Bank of America Corp. , The CIT Group Inc., The CIT Group/Business Credit, Inc., PNC Bank, N.A., Fifth Third Bank, Webster Business Credit Corporation, and Associated Commercial Finance, Inc.

Allen P. Pegg, Esq., and John F. O'Sullivan, Esq., Hogan Lovells US LLP; and Timothy P. Griffin, Esq., and Robert T. Kugler, Esq., Stinson Leonard Street LLP, counsel for Richter Consulting, Inc.

Adam A. Gillette, Esq., Lori A. Johnson, Esq., and Thomas E. Jamison, Esq., Fruth, Jamison & Elsass, PLLC; and James A. Lodoen, Esq., Terrence J. Fleming, Esq., and George H. Singer, Esq., Lindquist & Vennum PLLP, counsel for Intervenor Trustees.

---

## INTRODUCTION

This matter is before the Court on the following motions:  (1) Defendants' Motion to Refer This Case to Bankruptcy Court (Doc. No. 94); and (2) Trustees'[1] Motion to

---

[1]      "Trustees" refers to:  John R. Stoebner, in his capacity as the Chapter 7 Trustee of Polaroid Corporation, *et al*. ("Stoebner"); Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Petters Company, Inc., *et al.* ("Kelley"); and Randall L. Seaver, in his capacity as the Chapter 7 Trustee of Petters Capital, LLC ("Seaver").

Intervene[2] (Doc. No. 132). For the reasons set forth below, the Court grants the motions.

## BACKGROUND

### I. General Background

Plaintiffs Ritchie Capital Management and its affiliated investment funds ("Plaintiffs" or "Ritchie") allege that they suffered losses due to a number of fraudulent conveyances that were aided and abetted by Defendants JPMorgan Chase & Co. ("Chase"), JPMorgan Chase Bank, N.A., J.P. Morgan Europe, Ltd. (collectively, "JPMorgan") and Richter Consulting, Inc. ("Richter") (together, "Defendants"). Plaintiffs allege that JPMorgan knew, or "consciously avoided confirming" that Thomas Petters ("Petters") and his companies were committing fraud through a number of schemes, but nonetheless induced Plaintiffs to make a series of loans to Petters and his companies. (Doc. No. 138, First Am. Compl. ("FAC") ¶ 1.) The Court outlines the general allegations below.

Plaintiffs allege that the primary fraud in this case involved Polaroid Corporation ("Polaroid"), which was indirectly and majority owned by JPMorgan in 2004 as a result of its merger with Bank One, which had previously purchased Polaroid during Polaroid's bankruptcy proceedings. (FAC ¶ 3.) Plaintiffs allege that, in 2005, JPMorgan reached

---

[2] Trustees seek to join in: (1) Defendants' Motion to Refer this Case to Bankruptcy Court and accompanying Memorandum of Law (Doc. Nos. 94 & 96); (2) the Syndicated Lenders' Motion to Dismiss (Doc. No. 119 at 11-18); and (3) the JPMC Defendants' Motion to Dismiss (Doc. No. 113 at 13-16). (Doc. No. 134-1.) The Court notes that in light of the Court's decisions below, the pending motions to dismiss will be heard and decided by the bankruptcy court.

3

out to and sold Polaroid to Petters for approximately $426 million. (*Id.* ¶ 4.) As a result, Polaroid became a subsidiary of Petters Group Worldwide ("PGW"). (*See id.* ¶ 49.) JPMorgan and a number of other banks and financial institutions acted as syndicated lenders (the "Syndicated Lenders") for purposes of the sale. (*Id.* ¶ 5.) The Syndicated Lenders loaned Petters approximately $375 million the day after the sale closed ("Polaroid Loan"). (*Id.* ¶¶ 5, 65-66.)

Ultimately, Polaroid was unable to repay the loans. (*See id.* ¶¶ 92-126.) Plaintiffs assert that JPMorgan, however, did not foreclose the loans, entered into a number of forbearance agreements and extensions, and assisted Petters in finding sources to repay the loans, including loans from Plaintiffs. (*See id.*)

Plaintiffs allege that they transferred over $180 million, in a number of transactions, to Petters beginning in February 2008. (*Id.* ¶¶ 10, 136-77.) The loans were documented as "promissory notes" issued by PCI and PGW and with Petters as the co-signatory and guarantor (the "Ritchie Notes"). (*See, e.g.*, *id.* ¶¶ 158, 175.) The loans were partly used to refinance and pay the Syndicated Lenders, including JPMorgan, for the Polaroid Loan, but Plaintiffs were not repaid. (*See, e.g.*, *id.* ¶¶ 165, 177, 169.) Specifically, Plaintiffs allege that they transferred $31 million to PCI on February 1, 2008, which was then transferred through numerous Petters-related bank accounts and ultimately to JPMorgan on February 5, 2008. (*Id.* ¶¶ 157-61.) Plaintiffs allege that on February 7, 2008, they transferred $16 million to PCI, which was again transferred through numerous accounts and $12 million was ultimately paid to JPMorgan on February 7, 2008. (*Id.* ¶¶ 164-65.) Plaintiffs allege that Ritchie also loaned an additional

4

$99 million to Petters and his companies in February 2008. (*Id*. ¶ 166.) Plaintiffs further allege that JPMorgan established the accounts that Petters used. (*See id*. ¶¶ 183-84.)

Plaintiffs allege that JPMorgan aided and abetted Petters in fraudulently inducing Ritchie to extend loans to Petters. (*See id*. ¶¶ 136-155.) Plaintiff alleges that at the time of the sale, JPMorgan knew or "consciously avoided confirming" that Petters was engaging in a fraudulent purchase order financing scheme at his company Petters Company, Inc. ("PCI"), but proceeded with the deal and even "propped Petters up" so he could repay JPMorgan. (*Id*. ¶¶ 5, 6.) According to Plaintiffs, JPMorgan acted to ensure it could get repaid before the fraud was fully exposed to others affected by it. (*Id*. ¶ 7.) Ritchie further alleges that JPMorgan and others fraudulently received Petters-related property. (*See id*. ¶¶ 170-73.) According to Plaintiffs, JPMorgan was aware of a number of "red flags" associated with Petters and his businesses. (*See, e.g.*, *id*. ¶¶ 74-91.) Plaintiffs also allege that JPMorgan knew that Plaintiffs' transfers to PCI passed through numerous Petters-related accounts before being paid to JPMorgan for repaying Polaroid's debt. (*See, e.g.*, *id*. ¶¶ 183-84.)

## II.     Bankruptcy Proceedings

In October 2008, PCI and Petters Group Worldwide ("PGW") filed for bankruptcy protection in this District. *See In re Petters Co., Inc.*, Civ. No. 08-45257 (Bankr. D. Minn. Oct. 11, 2008). PCI, PGW, and other Petters-related debtors were consolidated into an omnibus proceeding. *See generally id*. Douglas Kelley ("Kelley") was appointed trustee for those proceedings ("Petters Bankruptcy Proceedings"). *See id*. In December 2008, Polaroid, which was wholly-owned by PGW, also filed for bankruptcy

5

protection in this district ("Polaroid Bankruptcy Proceedings"). *In re Polaroid Corp.*, Civ. No. 08-46617 (Bank. D. Minn. Dec. 18, 2008). In that case, John Stoebner ("Stoebner") was appointed trustee. *See id.* In June 2009, Petters Capital, LLC ("Petters Capital") also filed for bankruptcy. *See In re Petters Capital, LLC*, Civ. No. 09-43847 (Bankr. D. Minn. June 12, 2009.) Randall Seaver was appointed trustee for the Petters Capital proceedings ("Capital Proceedings"). (*See id.*) All bankruptcies were ultimately assigned to Chief Judge Kishel.

The Trustees have filed hundreds of adversary proceedings seeking recovery of transfers to Petters, and some involving Polaroid, based on avoidance provisions of the Bankruptcy Code. (*See, e.g.*, Doc. No. 97 ("Schneider Decl.") ¶ 4, Ex. A (*Kelley v. JPMorgan Chase & Co.*, Civ. No. 10-4443 (Bankr. Adversary Proceeding D. Minn Oct. 10, 2010).) Chief Judge Kishel has issued a number of rulings relating to common issues in these proceedings. *See, e.g.*, *In re Petters*, 499 B.R. 342 (Bank. D. Minn. 2013).

One such adversary proceeding is against Chase for its role as administrative agent for a credit facility in the form of a revolving loan to Polaroid in 2005. (Schneider Decl. ¶ 4, Ex. A (*Kelley v. JPMorgan Chase & Co.*, Civ. No. 10-4443 (Bankr. Adv. Proc. D. Minn. Oct. 10, 2010).) Trustees seek to recover Polaroid's loan repayments, made to Chase and with the assistance of Richter, as fraudulent transfers. (*See generally id.*) The Trustees' allegations include claims that Chase knew, or should have known, about the Petters fraud. (*See id.*) There are also other adversary proceedings involving Chase, for example: (1) *Kelley v. JPMorgan Chase & Co.*, Civ. No. 10-4444 (Bankr. Adv. Proc. D. Minn. Oct. 10, 2010); (2) *Kelley v. JPMorgan Chase & Co.*, Civ. No. 10-4445 (Bankr.

6

Adv. Proc. D. Minn. Oct. 10, 2010); and (3) *Kelley v. JPMorgan Chase & Co.*, Civ. No. 10-4446 (Bankr. Adv. Proc. D. Minn. Oct. 10, 2010).

Plaintiffs too have been involved in the bankruptcy proceedings; they have filed claims against debtors and are also subject to adversary proceedings. (*See, e.g.*, Schneider Decl. ¶ 7, Ex. D (Claim Nos. 97-100 in *In re Petters Co., Inc.*, Civ. No. 08-45257 (Bank. D. Minn.)); *see also id.* Schneider Decl. ¶ 5, Ex. B (*Kelley v. Ritchie Cap. Mgmt., LLC*, Civ. No. 10-4440 (Bankr. Adv. Proc. D. Minn. Oct. 10, 2010)).)

### III. Procedural Background

Plaintiffs initially brought this action in New York state court. (*See* Doc. No. 2, Notice of Removal.) Defendants removed the case to federal court. (*Id.*; Doc. No. 1.) Plaintiffs sought remand. (*See* Doc. No. 65 ("SDNY Order") at 1.) On the motion for remand, Judge Schofield of the United States District Court for the Southern District of New York denied remand and *sua sponte* transferred the case to this District. (*See generally id.*) Judge Schofield ordered transfer on the grounds that "related to" bankruptcy jurisdiction exists over Plaintiffs' claims and that at least two other cases involving Plaintiffs and "arising out of the same core of facts alleged" are pending in the bankruptcy court for this District. (*See generally id.*)

In this action, Plaintiffs assert the following eighteen causes of action against various Defendants: (1) Aiding and Abetting Fraud – The February 2008 Loans; (2) Aiding and Abetting Wrongful Diversion of Funds –The February 2008 Loans; (3) Aiding and Abetting Fraud – The March and May 2008 Loans; (4) Aiding and

7

Abetting Wrongful Diversion of Funds – The March and May 2008 Loans; (5) Constructive Fraudulent Conveyance – February 5, 2008 Transfer from Petters to JPMorgan of $31 Million; (6) Knowing Fraudulent Conveyance – February 5, 2008 Transfer from Petters to JPMorgan of $31 Million; (7) Constructive Fraudulent Conveyance Transfer of $31 Million from JPMorgan to Syndicated Lenders; (8) Knowing Fraudulent Conveyance – Transfer of $31 Million from JPMorgan to the Syndicated Lenders; (9) Constructive Fraudulent Conveyance – $12 Million Transfer from Petters to JPMorgan; (10) Knowing Fraudulent Conveyance – $12 Million Transfer from Petters to JPMorgan; (11) Constructive Fraudulent Conveyance – Transfer of $12 Million from JPMorgan to the Syndicated Lenders; (12) Knowing Fraudulent Conveyance – Transfer of $12 Million from JPMorgan to the Syndicated Lenders; (13) Constructive Fraudulent Conveyance – Repayment of $6.5 Million in March 2008; (14) Knowing Fraudulent Conveyance – Repayment of $6.5 Million in March 2008; (15) Unjust Enrichment; (16) Fraudulent Conveyance against Richter; (17) Commercial Bad Faith; and (18) Aiding and Abetting Breach of Fiduciary Duty – March Loan.  (FAC ¶¶ 193-323.)

      JPMorgan seeks referral to the bankruptcy court in this District.  (Doc. Nos. 94 & 96.)  The Trustees seek to intervene in this matter to "be authorized to appear and be heard in this matter and file the Joinder in Defendants' Motion to Refer this Case to Bankruptcy Court and Defendants' Motion to Dismiss the Amended Complaint."  (Doc. Nos. 132 & 134.)  The Court addresses each motion separately below.

## DISCUSSION

I. **Motion to Refer**

JPMorgan seeks referral to the bankruptcy court for the District of Minnesota. JPMorgan argues that that this action should be referred pursuant to Local Rule of Bankruptcy Procedure Rule 1070-1 and also in light of the factual and legal overlap with the ongoing Petters-related bankruptcy proceedings.

Under 28 U.S.C. § 1334, federal courts have "jurisdiction of all cases under the Bankruptcy Code and all civil proceedings that arise under, arise in, or are related to cases under the Bankruptcy Code." *Dietz v. Spangenberg*, Civ. No. 11-2600, 2013 WL 883464, at *3 (D. Minn. Mar. 8, 2013). When brought in state court, "[a] party may remove any claim or cause of action in a civil action . . . to the district court . . . if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452.[3] Further, under the District of Minnesota's Local Rule of Bankruptcy Procedure 1070-1, "[a]ll bankruptcy cases and proceedings, including any claim or cause of action that is removed under 28 U.S.C. § 1452 or Federal Rule of Bankruptcy Procedure 9027, are referred to the bankruptcy judges and shall be assigned among them according to orders made by them." Bankr. D. Minn. R. 1070-1.

---

[3] Removal is to the district where the civil action is pending, 28 U.S.C. § 1452; however, Judge Schofield properly transferred the case to the District of Minnesota where the action "might have [originally] been brought" and where venue is proper under 28 U.S.C. §§ 1404(a) & 1409(a). (*See* Doc. No. 65 at 13-15.)

JPMorgan argues that Judge Schofield has already determined that the action was properly removed to district court under 28 U.S.C. § 1452 based on "related to" bankruptcy jurisdiction and that therefore the plain language of the Local Bankruptcy Rule authorizes referral. JPMorgan further asserts that because Chief Judge Kishel is familiar with a number of proceedings involving the same "core of facts," judicial efficiency and consistency will be served by referral. Finally, JPMorgan contends that there are underlying standing and other issues, as well as factual issues, that implicate bankruptcy-law and the pending Petters-related bankruptcy proceedings and that these issues are therefore best resolved by the bankruptcy court.

Plaintiffs counter that the transfer from New York was to this Court and not to the bankruptcy court. Plaintiffs assert that the Edge Act provided federal subject matter jurisdiction in this case and that therefore the case belongs with this Court. Plaintiffs further argue that Local Rule 5011-3 of the Local Bankruptcy Court Rules requires that the case proceed in this Court. Plaintiffs also question the constitutionality of referring this matter to the bankruptcy court under *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Finally, Plaintiffs contend that the core facts here are not related to the pending bankruptcy proceedings and that there are no efficiencies gained by referral.

The Court disagrees with each of Plaintiffs' arguments and concludes that referral is appropriate. First, this Court has jurisdiction over this matter as a case that is "arising in or related to cases under title 11," 28 U.S.C. § 1334(b), because this Court concludes, as did Judge Schofield when transferring this case to this Court, that this case is "related to" a case "under title 11." (SDNY Order at 11.) Specifically, as Judge Schofield stated,

10

this case "is related to bankruptcy proceedings that are ongoing" in this District and "will likely affect the funds that the bankruptcy Trustees" in those proceedings are seeking. (*Id.* at 10, 13.) As Judge Schofield further stated, a number of underlying facts in this case are identical to those in the bankruptcy proceedings and the fact that the resulting harm may differ does not diminish the link between this proceeding and the bankruptcy estates. (*Id.* at 10.) Thus, because "[a] party may remove any claim or cause of action" to district court under 28 U.S.C. § 1452 when the district Court has "jurisdiction . . . under section 1334 of this title," which is the case here, this case was properly removed under 28 U.S.C. § 1452 based on this court's § 1334 "related-to" bankruptcy jurisdiction.

Second, Local Bankruptcy Rule 1070-1 is applicable. Rule 1070-1 reads: "All bankruptcy cases and proceedings, including any claim or cause of action that is removed under 28 U.S.C. § 1452 . . . *are* referred to the bankruptcy judges." Bankr. D. Minn. R. 1070-1 (emphasis added). Quite simply, as stated above, this case was indeed properly removed under 28 U.S.C. § 1452 as a "related-to" bankruptcy proceeding and therefore the bankruptcy court can appropriately hear this "related-to" matter. Further, it is not disputed that, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district" and that "a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case

11

under title 11." 28 U.S.C. § 157(a) & (c). Thus, on multiple grounds, this case is properly referred to this District's bankruptcy court.[4]

Plaintiffs' attempt to distinguish this case by arguing that the funds at issue here are a *personal property interest* of Petters and are not related to Petters entities fails. Even if Plaintiffs' assertion proves true, the claims and facts here are, at least to some degree, related to those claims pending in the bankruptcy proceedings. Therefore, all claims are best considered by the same court.

Local Rule 5011-3 does not change this analysis as Plaintiffs assert. Under that rule, a case is properly transferred to district court for trial when a party is entitled to a jury trial. *See* Bankr. D. Minn. R. 5011-3 ("the bankruptcy judge shall transfer to the district court . . . any proceeding in which the court has determined that there is a right to trial by jury of the issues for which a jury trial has been timely demanded, and the parties have not consented to the bankruptcy judge conducting the jury trial"). Rule 5011-3, however, does not impact the bankruptcy court's work prior to trial on a case. *See Ries v. Jacobs*, Civ. No. 12-1628, 2012 WL 3184795 (D. Minn. Aug. 2. 2012) (stating that a defendant's "Seventh Amendment right to a jury trial is not abridged in any way by the Bankruptcy Court hearing and deciding pretrial matters" and citing cases finding that a bankruptcy court's retention of a proceeding until trial promotes judicial economy)

---

[4] Moreover, while this Court also has federal subject matter jurisdiction under the Edge Act, the "related-to" bankruptcy jurisdiction provides an independent basis for the Court's subject matter jurisdiction in this matter. Therefore, Plaintiffs' attempts to argue that the jurisdiction conferred by the Edge Act somehow undermines the Court's "related-to" bankruptcy jurisdiction are misplaced.

(citations omitted); *see also In re Petters*, 440 B.R. 805 (Bankr. D. Minn. 2010) (stating that "the mere making of a demand for a jury trial does not affect bankruptcy jurisdiction in any way" and allowing the bankruptcy court to proceed in hearing the action). Referral in this case at this time in no way impairs Plaintiffs' ability to have a jury trial before the district court. Therefore, Plaintiffs' argument that referral is inappropriate because they have a right to a jury trial is of no avail.

Similarly, Plaintiffs' arguments relating to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), do not preclude referral to the bankruptcy court. Plaintiffs assert that because *Stern* held that the bankruptcy court lacked authority to enter final judgment on a counterclaim, the bankruptcy court's authority to hear this matter is constitutionally questionable. However, *Stern* precludes the bankruptcy court's entry of final judgment on certain matters, but such issues are not implicated by the instant referral. *See Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) (stating, "[i]n *Stern*, we held that Article III prohibits Congress from vesting a bankruptcy court with the authority to finally adjudicate certain claims"); *Dietz*, 2013 WL 883464 at *3 (stating that *Stern* does not "pertain to a bankruptcy court's subject matter jurisdiction; rather, it delineated the allocation of the authority as between the district court and the bankruptcy court to enter final judgments") (quotation and citation omitted). Thus, referral at this stage does not run afoul of *Stern* and is appropriate. Further, such a determination does not undermine

13

the Court's ability to review those matters which are properly issued as non-final judgments in this matter.[5]

There is also significant factual and legal overlap with the ongoing Petters-related bankruptcy proceedings. As JPMorgan notes, "it is indisputable that . . . there are adversary proceedings [involving both Plaintiffs and Defendants] pending before the bankruptcy court" and those proceedings may implicate fund transfers at issue in this case. (Doc. No. 131 at 9.) There is an interest in uniform administration of all matters that implicate the Petters related bankruptcies. *See Kelley v. Opportunity Fin., LLC*, Civ. No. 14-3375, 2015 WL 321536, at *5 (D. Minn. Jan. 26, 2015) (holding that "[t]he bankruptcy court is currently administering many adversary proceedings in the Petters case that have similar administrative, factual, and legal issues to this adversary proceeding. It has a clear view of how the hundreds of adversary cases are related to each other and to the overall bankruptcy. Even though the district court may be asked to conduct a *de novo* review at a later stage, the bankruptcy court's proposed findings of fact and conclusions of law advance the interests of uniformity of bankruptcy administration and mitigate the danger of shopping for what may be perceived to be a more favorable or expeditious forum in the district court"); *see also In re Petters*, 440 B.R. at 811 (Bankr. D. Minn. 2010) (stating that there is a "benefit of a uniformity" in these Petters-related

---

[5] The Court recognizes the parties' assertions that they do not consent to the issuance of final orders or judgment by the bankruptcy court.

14

matters). Here, the interest in uniformity and the increased efficiency is equally important. In sum, this matter is properly referred to the bankruptcy court.

## II. Motion to Intervene

The Trustees seek to intervene to "be authorized to appear and be heard in this matter and file the Joinder in Defendants' Motion to Refer this Case to Bankruptcy Court and Defendants' Motion to Dismiss the Amended Complaint." (Doc. No. 134 at 1.)[6]

Intervention by right under Rule 24(a)(2) of the Federal Rules of Civil Procedure must be timely. When determining whether a motion to intervene is timely, the Court considers all of the surrounding circumstances, including the reason for any delay, the prospective intervenors' prior knowledge of the pending action, the progression of the litigation, and the likelihood of prejudice to the parties. *See, e.g., Arrow v. Gambler's Supply, Inc.,* 55 F.3d 407, 409 (8th Cir.1995).

Intervention by right also requires that: (1) the party seeking intervention have a recognized interest in the subject matter of the litigation; (2) the interest must be one that might be impaired by the disposition of the litigation; and (3) the interest must not be adequately protected by the existing parties. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1160 (8th Cir. 1995). Rule 24 is to be construed liberally, with all doubts resolved in favor of the proposed intervenors. *Id.* (citations omitted).

---

[6] Although the Court previously determined that intervention by the Trustees was appropriate and, as a result, the Trustees were already heard on the motion to refer, the Court still conducts its analysis here. The Court again notes that in light of the Court's decisions in this Memorandum Opinion and Order, the pending motions to dismiss will be heard and decided by the bankruptcy court.

15

Considering the timeliness factors, the Court concludes that the intervenors' motion is timely. Judge Schofield ordered this matter transferred to this District in November 2014. The intervenors filed their motion in February 2015 and before any matters had been heard. Further, the intervenors are moving at early stages of litigation. Answers have not been filed and motions to dismiss have not been ruled on. It also appears that discovery has been minimal. Questions of removal, remand, and transfer have now been resolved and the case is in the court in which it will be litigated. More importantly, there is no prejudice to Plaintiffs by any "delay" in moving to intervene. *See Union Elec.*, 64 F.3d at 1159 (stating that "the question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change") (citations omitted). Those issues that implicate the Trustees will not expand the scope of discovery significantly beyond its current scope given the interrelated nature of the issues and questions likely to come before the court. Thus, considering all of the surrounding circumstances, the intervention is timely.

The Court concludes that the remaining factors have been met. First, the Trustees have a recognized interest in the subject matter of the litigation. The Trustees have a "direct, substantial, and legally protectable interest" in the claims being asserted and litigated by Plaintiffs because the parties are at least partially seeking recovery of the same funds. *See Animal Prot. Inst. v. Merriam*, 242 F.R.D. 524, 527 (D. Minn. 2006) (citing *Union Elec.*, 64 F.3d at 1161). It may be that funds JPMorgan received will be recovered by one party at the expense of the other as the proceedings move forward.

16

This meets the first factor, in part, because "[a] party seeking to intervene need not establish that its interests will actually be impaired, but only that its ability to protect its interest will be impaired if it is denied permission to intervene." *Id.* Here, Plaintiffs and Trustees seek to recover funds from JPMorgan and those funds relate to Petters, his companies, and their schemes. Second, the Trustees' interest might be impaired by the disposition of the litigation. That is, a court could conclude that those funds the Trustees allege were fraudulently transferred to JPMorgan are the very same funds that Plaintiffs allege were fraudulently transferred to JPMorgan.

Plaintiffs' arguments to the contrary are insufficient. Plaintiffs assert that the funds they seek were personal assets of Mr. Petters himself and are not related to any of Petters' companies. The Court disagrees with Plaintiffs' contention. For example, Plaintiffs' allegations include references to funds generated in PCI's bank account. (*See, e.g.*, FAC ¶¶ 167-70.) However, even accepting Plaintiffs' assertions as true, it is still the case that, at the very least, this litigation may affect the bankruptcy estates and a number of issues are common amongst the various cases and parties. The parties and the court will have to determine the nature of the interests at stake and of the funds implicated by this suit and others, but the Trustees should be able to represent their interests when those issues are addressed. Thus, the requirements for the first two factors are met.

Finally, the Trustees' interests are not adequately protected by the existing parties. That this factor is met here is fairly obvious as the Trustees have a number of adversary proceedings pending against the parties themselves. The interests of the parties cannot fully align and thus the Trustees' interests would not be adequately protected by those

parties. Put another way, as summarized by the Trustees: "Ritchie is seeking to recover funds from JPMC and others for its sole benefit and to the direct detriment of the creditors of the Debtors' bankruptcy estates. The Defendants, on the other hand, seek to avoid liability to both Ritchie and to the Trustees." (Doc. No. 134 at 13.) The third factor has been met.[7]

In sum, intervention to "be authorized to appear and be heard in this matter and file the Joinder in Defendants' Motion to Refer this Case to Bankruptcy Court and Defendants' Motion to Dismiss the Amended Complaint" is appropriate and the Trustees' motion is granted.

## ORDER[8]

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Refer This Case to Bankruptcy Court (Doc. No. [94]) is **GRANTED**.

2. Trustees' Motion to Intervene (Doc. No. [132]) is **GRANTED**.

Dated: July 2, 2015    s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

---

[7] Because the Court has determined that intervention as a matter of right is appropriate, the Court need not examine permissible intervention. However, the Court notes that in light of its analysis on intervention as a right, the Trustees would likely also meet the requirements for permissive intervention.

[8] The Court previously entered this same Order in short form and this is the corresponding full Memorandum Opinion and Order. (*See* Doc. No. 149.)